## IOWA CITY STATE BANK *v.* BIGGADIKE.

Opinion delivered December 17, 1917.

1. SALES—REPRESENTATIONS OF SELLER—WARRANTY.—Where the buyer has no opportunity to inspect the goods bought, he may rely upon the representations made by the seller as to the quali-

ties of the goods of the seller's manufacture; and in such case the law implies a warranty that the articles shall be merchantable and reasonably fit for the purposes for which they were intended.

2.  VERDICT—GENERAL FINDING.—Under Kirby's Digest, § § 6207 and 6208, a general verdict for the defendant imports a finding in his favor upon all the issues in the case which are consistent with the special findings returned by the jury.

3.  VERDICT—GENERAL AND SPECIAL FINDINGS—INCONSISTENCY.—When a question of inconsistency between the general verdict and the special verdict arises, nothing is presumed in aid of the special finding, while every reasonable presumption is indulged in favor of the general verdict.

4.  BILLS AND NOTES—INNOCENT PURCHASER FOR VALUE.—The A. Co. sold toilet articles to appellee to be resold by appellee, taking a promissory note in payment. Appellant purchased this note before maturity, and brought suit thereon against appellee. Appellee defended upon the ground of fraud, that the articles purchased from A. Co. were worthless. It appeared among other things that appellant had purchased several hundred notes from A. Co., similar to the one in suit; that many of them were refused payment on the ground of fraud; that when appellant purchased said notes it required A. Co. to put up collateral; and that A. Co. paid the expenses of litigation arising out of its notes. *Held,* under these facts a finding by the jury that appellant was not an innocent purchaser for value, would not be disturbed on appeal.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

*Carmichael, Brooks & Rector,* for appellant.

1.  The note is negotiable. 121 Ark. 59; 42 *Id.* 167; 96 *Id.* 105; Kirby & Castle's Digest, § § 6942-4; 143 Pac. 159; 108 Mich. 184; 33 *Id.* 32; 129 Wis. 84; 81 Wash. 442; 163 Iowa 205; 35 L. R. A. (N. S.) 330; 184 Ill. 158; 61 Kans. 526; 134 Fed. 538; 143 N. W. 556; 136 *Id.* 204; 61 Iowa 166; 170 Fed. 313; 188 S. W. 61, and others.

2.  Plaintiff was a *bona fide* holder of the note. 63 Ark. 604; 94 *Id.* 387; 96 *Id.* 105.

3.  There was no fraud nor misrepresentation in the sale. 73 Ark. 470; 48 *Id.* 325; 53 *Id.* 155; 72 *Id.* 343. See also, 39 Pac. 566; 48 *Id.* 341; 98 N. W. 923; 49 N. Y. 390; 56 N. W. 669; 60 La. 710; 41 Ill. App. 642; 158 Mass. 194; 57 Ga. 50; 115 N. Y. 539; 77 Wis. 44; 5 Fed. 83; 32 Neb. 723; 54 N. W. 311; 77 Mich. 540.

*Marshall & Coffman,* for appellee.

1. The note was not negotiable, because of the provision for a discount of 6 per cent on the entire amount if paid at maturity of first installment. The Iowa law is the same as ours. Acts 1913, p. 269; 155 Pac. 1152; 40 L. R. A. (N. S.) 177; 2 Tenn. C. C. A. 366; 55 Am. Dec. 56; 8 N. W. 87; 18 *Id.* 248; 46 L. R. A. 732; 111 Mass. 525; 40 L. R. A. (N. S.) 177; 21 Am. Rep. 209; 11 Bush (Ky.) 180; 165 Pac. 508, and many others.

2. Plaintiff was not an innocent holder of the note and the jury so found. 121 Ark. 250; 79 *Id.* 94, 426; 136 Pac. 460; 117 *Id.* 1003; 91 *Id.* 382; 29 L. R. A. (N. S.) 351, 638; 125 S. W. 224; 79 S. E. 498.

3. There was fraud and misrepresentation, as well as an implied warranty of merchantability and reasonable fitness. 35 Cyc. 397; 73 Ark. 470; 72 *Id.* 343; 83 *Id.* 15; 90 *Id.* 78; 77 *Id.* 546. See also, 74 Me. 475; 44 Pac. 544; 23 W. Va. 760.

### STATEMENT OF FACTS.

This is an action by the Iowa City State Bank against W. S. Biggadike to recover the sum of $148 and interest alleged to be due upon a promissory note. The Donald-Richard Company is a corporation engaged in the manufacture and sale to merchants of toilet articles at Iowa City, Iowa. On February 2, 1914, one of its traveling salesmen sold a bill of goods consisting of perfume and other toilet articles to the amount of $148 to W. S. Biggadike in the City of Little Rock, Arkansas. In payment therefor Biggadike executed the following note:

"Iowa City, Iowa, February 2, 1914.

"For value received, the undersigned promises to pay at Iowa City, Iowa, to the order of Donald-Richard Company, one hundred forty-eight and no/100 dollars as follows:

"A discount of 6 per cent. will be given if the full amount of this instrument is paid at maturity of first installment. Non-payment of any installment for more

than 30 days after maturity renders remaining install-
ments due at holder's option.

"$37.00 three months after date.

"$37.00 five months after date.

"$37.00 seven months after date.

"$37.00 nine months after date.

"(Signed) W. S. Biggadike."

The note bore the following endorsement:

"Mar. 12, 1914. Pay Iowa City State Bank, Iowa
City, Iowa, or order.

"Donald-Richard Co., by M. H. Taylor."

Biggadike testified that at the time of the sale he
had been engaged in the general merchandise business
in the City of Little Rock for about eight years. He
stated that the salesman did not show him any samples
of the articles sold, that he had a small sample case
but that it was nothing like large enough to hold samples
of the articles sold; that the agent said the goods sold
were as good as the best and that the articles offered for
sale were merchantable; that he had the articles on dis-
play in his store and used every effort to sell them and
that he only disposed of $11.71 worth; that he paid
freight on the goods amounting to $8.40; that most of
the goods he did sell were returned by customers on
the ground that they were worthless; that the goods were
practically worthless and that the salesman had misrep-
resented them in selling them to him. Eight or nine
other merchants in the cities of Little Rock and Argenta,
who also bought goods from the company at about the
same time, corroborated the testimony of Biggadike.

One of these merchants testified that he had been in
the mercantile business in Little Rock for about fifteen
years when he bought the perfume and toilet articles
from the company; that he kept the goods on display
from February 6, 1914, until March 11, 1916; that the
goods were invoiced at $121.90 and that he had only sold
$26 worth of the goods; that he had displayed the goods
in a case in front of his store and did everything possi-

ble to sell them; that the goods were not merchantable and were not fit for the purposes for which they were intended.

Another witness testified that he had been in the grocery business in Little Rock for about twenty-five years; that he had also bought perfumes and toilet articles from this same company; that he displayed the goods and made every effort to sell them but had only sold a very small amount of them; that the people to whom he sold them complained of the goods; that the goods were not fit for the purposes for which they were intended and did not come up to the representations of them made by the salesman of the company.

On the other hand the chemist of the company testified that he had purchased from wholesale houses the materials that were used in the manufacture of the goods for the company and had mixed all the ingredients himself; that the materials purchased by him, of which he manufactured the goods, were first class in quality and that the articles sold to Biggadike and the other merchants by the company were of the very best quality, price considered. It was shown by the defendant that he offered to return the goods after he found they were not as represented by the salesman of the company.

When the case was submitted to the jury a special interrogatory for a finding of fact was submitted to it. At the time the jury returned its general verdict it also returned the special verdict. The general verdict of the jury was for the defendant. The special interrogatory submitted and the answer thereto is as follows:

"An innocent purchaser of a note is one who obtains it in the due course of business, for value, before maturity, in good faith, without notice of any defenses the maker may have to it.

Is the Iowa City State Bank an innocent purchaser? Ans. No."

Judgment was rendered in favor of the defendant and the plaintiff has appealed.

HART, J., (after stating the facts). The note in question was transferred to the plaintiff bank for value before its maturity.

It is earnestly insisted by counsel for the plaintiff that the note sued on was negotiable in form under our Negotiable Instrument Law (Acts of 1913, p. 270), and that the court erred in not so stating to the jury. But the views we shall hereinafter express make it unnecessary for us to decide this question. The trial court was evidently of the opinion that the note was not negotiable; for in its general instructions to the jury it refused to submit the question of whether or not the plaintiff was an innocent holder before maturity for value and in the usual course of business. The court submitted the case to the jury on the question of the false representations of the salesman of Donald-Richard Company.

Among other instructions at the request of the defendant it gave the following:

"If you find from the evidence that defendant was induced to buy the goods by reason of false and fraudulent representations of the salesman of Donald-Richard Company, and if you further find that defendant offered to return the goods within a reasonably fit time after discovering such fraud, then your verdict will be for the defendant."

The plaintiff asked the court to give the following instructions:

"No. 3. Fraud is a material false representation, made with a knowledge of its falsity, or a reckless disregard of whether it is true or false, intending that the party to whom it is made shall rely upon it, and the party to whom it is made must have the right to rely upon such statements, and he must rely upon them, and so relying act upon them to his injury."

"No. 4. By material misrepresentation is meant a false statement about existing or past facts, as distinguished from expressions of opinion of what could be done in the future; statements that goods were salable

or would increase sales, and bring business are mere
matters of opinion and do not constitute fraud.''

(1)   The court gave instruction No. 3 but modified
instruction No. 4, by striking therefrom the words ''were
salable or.'' The court did not err in giving the in-
struction on this phase of the case asked by the defend-
ant nor in striking from the instruction No. 4 as asked
by the plaintiff the words ''were salable or.'' The com-
pany manufactured the goods which it offered for sale.
Its place of business was in another State. The buyer
had no opportunity to inspect the goods before he pur-
chased them and had a right to rely upon the representa-
tions made by the seller of goods of his own manufacture.
In such cases the law implies a warranty that the arti-
cles shall be merchantable and reasonably fit for the pur-
poses for which they were intended. *Main* v. *Dearing*,
73 Ark. 470; *Main* v. *El Dorado Dry Goods Co.*, 83 Ark.
15; *American Standard Jewelry Co.* v. *Hill*, 90 Ark. 78;
and *Metropolitan Discount Co.* v. *Fondren*, 121 Ark. 250.

(2)   Tested by the principles of law laid down in
these cases it is perfectly evident from the testimony
recited in the statement of facts of the witnesses for the
defendant (and which need not be repeated here) that
the evidence is legally sufficient on this phase of the case,
to warrant the verdict. This being true it becomes imma-
terial to decide whether or not the note sued on was ne-
gotiable in form under our Negotiable Instrument Act;
for, if it be assumed that the note was negotiable in form
still the court was right in rendering judgment in favor
of the defendant on the general verdict. We have copied
into the statement of facts the special interrogatory sub-
mitted to the jury and the answer thereto. Under this
the court submitted to the jury the question of whether
or not the plaintiff was an innocent purchaser. Section
6207 of Kirby's Digest, provides that in all actions the
jury may be required by the court in any case in which
they render a general verdict to find specifically upon a
particular question of fact to be stated in writing and

that this special finding is to be recorded with the verdict. Section 6208 provides that when the special finding of fact is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly. So it will be seen that under our statutes, a general verdict for the defendant imports a finding in his favor upon all the issues in the case which are consistent with the special findings returned by the jury. *Little Rock & Ft. Smith Ry.* v. *Miles,* 40 Ark. 298, and *Mauney* v. *Millar,* 117 Ark. 633. There is no inconsistency in the present case between the general and special verdict. Indeed, the latter aids the former.

(3) It is contended by counsel for the plaintiff that the special finding of the jury was based upon the theory that the note was non-negotiable. We do not agree with counsel in this contention. The jury specifically answered that the plaintiff was not an innocent purchaser. The court in framing the interrogatory defined an innocent purchaser of a note to be one who obtains it in due course of business, for value before maturity, in good faith without notice of any defenses the maker might have had to it. The jury must have had in mind this definition of an innocent purchaser when it made its special findings. It is well settled that when a question of consistency between the general verdict and the special one arises, nothing is presumed in aid of the special findings, while every reasonable presumption is indulged in favor of the general verdict. *Morrow* v. *Bonebrake,* 84 Kan. 724, 34 L. R. A. (N. S.) 1147, and *Kafka* v. *Union Stock Yards Co.* (Neb.), 110 N. W. 672.

Mr. Thompson says that, if possible, the special findings will be interpreted so as to support the verdict rather than overturn it. Thompson on Trials, (2 Ed.), Sec. 2693.

(4) Finally it is insisted that there is no testimony in the record upon which to base the finding that the plaintiff was not an innocent purchaser for value. But we can not agree with counsel in this contention.

It is true that the cashier of the bank testified that his bank purchased the note sued on for value in the usual course of business before maturity and that at the time he did not know for what the note was given or that the defendant had any defense to it.

On cross-examination, however, the cashier detailed a state of facts which tended to contradict this testimony and from which the jury might have found that the bank was not an innocent purchaser for value. The bank had been extensively engaged in purchasing notes of between one hundred and two hundred dollars in amount for several years prior to the transaction in question. It knew that the company was engaged in the wholesale manufacture and sale of toilet articles to merchants in various parts of the country. More than five hundred notes of about the same amount as the note sued upon had been transferred by the company to the bank during the past few years. These notes were given by persons scattered over different states. No investigation of their financial standing was made by the bank when the notes were transferred to it, except to ask the manufacturing company if the makers were solvent. The cashier stated that he understood in a general way that the notes were customers' notes; that he had been a witness in from twenty-five to fifty suits on notes of this kind during the past few years and that the defense of fraud similar to the defense made in the present case had been set up in about twenty-five per cent of these cases; that the bank had been successful in from seventy-five to eighty-five per cent. of them; that the manufacturing company was required to put $1.25 in collateral in notes for every $1.00 furnished by the bank; that the company paid all the expenses of suit when it was necessary to sue on the notes. The bank and the manufacturing company were engaged in business in the same city and under the circumstances detailed above the jury was warranted in finding that the bank was not an innocent purchaser of the note sued on. *Holland Banking Co.* v. *Booth,* 121 Ark. 171; *First Na-*

*tional Bank of Iowa City* v. *Smith* (Col.), 136 Pac. 460; *Johnson County Savings Bank* v. *Rapp* (Wash.), 91 Pac. 382, and *Johnson County Savings Bank* v. *Gregg,* 117 Pac. 1003.

It follows that the judgment must be affirmed.