THOMAS BROS. LUMBER COMPANY *v.* HILL.

4-6919                                                    166 S. W. 2d 3

Opinion delivered November 30, 1942.

*Fred A. Isgrig* and *Carl E. Langston,* for appellant.

*G. W. Lookadoo,* for appellee.

McHANEY, J. Appellant, Thomas Bros. Lumber Co. is a partnership, composed of several brothers, and is engaged, in that firm name, in the operation of a saw mill and lumber yard at Curtis, Clark county, Arkansas. They employed one Johnie Bean, who owned a portable saw mill, to cut logs off their land and saw same into lumber for $10 per M. delivered. Bean hired and fired his own employees, but Thomas Bros. kept his pay roll and paid his men. The only control Thomas Bros. exercised over Bean was to designate the dimensions of the lumber cut from their logs. We assume that Bean was an independent contractor. On January 8, 1941, while Bean was cutting logs and sawing them into lumber for Thomas Bros., appellee, sawyer for Bean, fell into the saw and his right hand was severely injured, suffering the loss of three fingers and a part of his hand. On April 7, 1941, he filed a claim for compensation with the Workmen's Compensation Commission, in which he stated that his employer was Thomas Bros. and that appellant, Commercial Standard Insurance Co., was the insurance carrier. A policy of insurance was issued by appellant, Commercial Standard, to Thomas Bros. on December 5,. 1940, and it defended the claim on the ground that its policy covered Thomas Bros. only and not Johnie Bean and his employees, one of which was appellee Hill; that Bean was an independent contractor of Thomas Bros.; and that neither the company nor its authorized agents intended to cover contractors or subcontractors of Thomas Bros. On the other hand appellee insisted that the policy covers him, irrespective of whether Johnie Bean was an independent contractor or an employee of Thomas Bros. at the time he was injured; and that it was the intention of all the parties—Thomas Bros.,. Johnie Bean and A. B. Banks Insurance Agency, general agents of Commercial Standard, as also the local agent or broker, Charlie East—when the policy was written on Thomas Bros. to cover the operations of Johnie Bean. Charlie East and Lawrence Banks of the A. B. Banks

Agency so testified, as did Johnie Bean and Ira Thomas, one of the partners. Bean testified that Mr. Thomas promised to look after his insurance coverage shortly before December 5, 1940, and that he started paying a premium on his insurance at that time, or about that date. Ira Thomas testified he told East to cover Johnie Bean's operations, and that they kept a copy of the payroll of Bean's Mill. East said that he was instructed by Thomas Bros. to procure Workmen's Compensation Insurance to cover them, Johnie Bean and Tom Marshall, another operator for Thomas Bros.; that he brokered the insurance through A. B. Banks Company of Fordyce and instructed them to cover Thomas Bros., Bean and Marshall and all their operations; that an initial payment on the premium of $512.50 was made and this amount was the deposit on insurance to cover all three insureds. They gave a binder on the 5th of December which covered all three and the policy was issued later. Lawrence Banks testified that: ''At the time Thomas Bros.' policy was written Mr. East told me that a Mr. Bean and a Mr. Marshall were working for Thomas on a contract basis and would they come under Thomas Brothers' policy—I told him that they would.''

A mass of testimony was given before the Commission and it made a finding that the policy covered Bean's employees and made an award to appellee, the amount of which is not here in question. An appeal was taken to the Clark circuit court where the judgment and award of the Commission were affirmed. This appeal followed.

For a reversal of this judgment, appellant insurance carrier (and it is the only real appellant) first says that since appellee was the employee of Bean, an independent contractor of Thomas Bros. who was not specifically named in the policy of insurance, and was not an employee of Thomas Bros., it is not liable to appellee. Section 6 of the Workmen's Compensation Law, Act 319 of 1939, p. 777, is quoted and it is stated that this section was borrowed from the New York Act with the construction theretofore placed on it by the appellate court of that state and certain cases are cited to the effect that

the insurance carrier for a contractor cannot be held for an injury to an employee of a subcontractor unless the carrier has specifically covered the subcontractor's employees in its policy. *Passarelli* v. *Columbia E. & C. Co.*, 270 N. Y. 68, 200 N. E. 583, and *Monello* v. *Klein*, 216 App. Div. 105, 214 N. Y. S. 486. Conceding this contention to be correct, we do not think it applicable here for this reason: Shortly after the policy was written, A. B. Banks & Co. sent to Charlie East for Thomas Bros. to execute the following agreement: "In consideration of the issuance of Workmen's Compensation coverage on our operations we understand that the policy covers all employees including the employees of any contractor or sub-contractor that we engage who has not provided Workmen's Compensation coverage of his operations.

"We agree to fully comply with § 3 of the Arkansas Workmen's Compensation Endorsement No. 347 attached to our policy.

"It is further agreed that in the event certificates of coverage are furnished, we shall require that such certificates will provide that we will be given fifteen days' notice of cancellation in the event of termination of such coverage." This agreement was executed by Thos. Bros., the six of them signing. The one executed shortly after December 5, 1940, was lost or misplaced by Banks, so he sent them another dated March 5, 1941, which was likewise executed. We think this instrument, no matter when actually executed by Thomas Bros., relates back to the effective date of the binder or policy and therefore covered "the employees of any contractor," one of which was Johnie Bean, just as completely and effectively as if he had been specifically mentioned therein.

The only other contention for a reversal of the judgment is that the Commission undertook to reform the policy issued to Thomas Bros. to "specifically cover" the appellee and, in doing so exceeded its powers, and the circuit court erred, therefore, in affirming the decision of the Commission. It is insisted with much persuasive force that reformation of written instruments is a matter for the exclusive exercise of equity jurisdiction, and that the Workmen's Compensation Law does

980

not confer any such authority on the Commission. While we are prepared to quite agree with appellant's argument in this regard, we think it inappropriate here. The Commission did not undertake to reform the policy, or if it did, it was unnecessary to the decision made by it. The writing executed by Thomas Bros. as above set out had the effect of reforming the policy as originally issued so as to cover the employees of contractors and subcontractors. This writing was executed in conformity with the original intent and purpose of all the parties and had the effect of extending coverage for Bean's employees, including appellee, from December 5, 1940. It is said that appellant has not collected premiums-based on Bean's payroll. It either has or had the opportunity to so figure its premiums, since Thomas Bros. kept Bean's payroll. The $512.50 deposit made on the estimated premium to become due, a portion of which was paid by Bean, was for the purpose of covering all employees of Thomas Bros., Bean and Marshall, and Bean says he began paying on his *pro rata* share thereof at that time. After the injury to appellee, appellant issued to Bean an individual policy and it is argued this is indicative of the contention that he was not covered in the policy issued to Thomas Bros. On the contrary, we understand that Bean quit cutting for Thomas Bros. And, if so, would not be covered by its policy.

Affirmed.