ANDREWS *v.* GROSS & JANES TIE COMPANY.

4-8258                                            204 S. W. 2d 783

Opinion delivered September 22, 1947.

Rehearing denied November 3, 1947.

*P. L. Smith,* for appellant.

*J. Ed Morneau,* for appellee.

McHANEY, Justice. Appellant filed a claim with the Workmen's Compensation Commission against appellees for an award of compensation for injuries sustained by him while allegedly in the employ of Gross & Janes as a timber cutter. After an extended hearing both before the referee and the whole Commission his claim was denied on the ground that he was not an employee of Gross & Janes, but that he was an employee of D. F. Tutt and that he suffered an injury arising out of and in the course of his employment with D. F. Tutt. An award was made in his favor against D. F. Tutt. An appeal was taken by appellant from the award of the Commission denying compensation as against Gross & Janes to the Pike Circuit Court, which resulted in the affirmance of the award of the Commission. This appeal followed in due course. D. F. Tutt did not appeal and the award against him is not before us.

The facts, briefly stated, are, as found by the Commission, that Gross & Janes either sold two sawmills to D. F. Tutt, or bought two sawmills for him, and took a

mortgage on them to secure the purchase price which was to be paid out of so much per tie cut by him. D. F. Tutt operated one of these mills and his brother, Emmett Tutt, operated the other for one-half the net profits, D. F. Tutt to receive the other half. Appellant was injured shortly after going to work with one McKinnon, both jointly cutting and sawing timber in the woods for ties and lumber to be manufactured at the Emmett Tutt mill, who paid all his employees by his own check. Gross & Janes did not pay any of the Tutt employees or exercise any control over them in the method or manner of doing their work. Appellant was paid his share of the earnings of himself and McKinnon for the short time he worked by the latter who collected it from Emmett Tutt. The ties made at the Tutt mills were sold to Gross & Janes by the Tutts for the published or market price. The lumber made in the operation of the mills was sold to others and not to Gross & Janes. No insurance was carried on Emmett Tutt's employees, but was on D. F. Tutt's employees, because the former was paid on a piece work basis, so much per stick, whereas the latter worked by the hour. It was thought the former were independent contractors.

To reverse the judgment appellant argues several points, the most serious one being that Gross & Janes were the real employers of all those ostensibly employed by the Tutts, and that the sale of the two mills to D. F. Tutt was but a sham or pretended sale to avoid responsibility for any injuries they might sustain. In some respects this case is similar to that of *Hobbs-Western Co. v. Craig*, 209 Ark. 630, 192 S. W. 2d 116, where Hobbs-Western undertook the financing of several individuals to operate tie mills to manufacture crossties and to deliver such ties to its tie yard for acceptance by the railroad company for its account. Craig was fatally injured while working for Lea, who carried no compensation insurance and who was financed by Hobbs-Western, and claim was allowed by the Commission under § 6 of the Workmen's Compensation Act, 319 of 1939, for his death. We affirmed the Commission's award. Here, the Commission did not find that Tutt was a subcontractor of

Gross & Janes, even though its field superintendent, Woodrow Epperson, filed what is called Employer's First Report of Industrial Injury with it, in which he stated that D. F. Tutt, contractor, was the employer, and Consolidated Underwriters was named as the insurance carrier for D. F. Tutt. In this he was in error as to the insurance carrier. Gross & Janes did not file the report of injury, but Epperson did file it for D. F. Tutt, or at least D. F. Tutt was reported as the employer, and he had no insurance carrier on Emmett's employees. Later, the adjuster for the insurance carrier, J. C. Elmore, filed a notice of intention to controvert appellant's claim in which he referred to the employer as "D. F. Tutt, subcontractor" and to the carrier as "Consolidated Underwriters, Insuror for Gross & Janes Company." This report was signed for the employer as "D. F. Tutt, subcontractor for Gross & Janes Company, by J. C. Elmore, Adjuster." Other hearsay testimony was to the effect that compensation had been paid two other employees of the Tutts by the insurance carrier. The witness did not know this to be a fact, but had heard that it was done. The Commission found and stated in its opinion that a search of their records had been made and they had been unable to find any record where Gross & Janes paid compensation to the two men the witnesses named, Thomas and Faire, as having received compensation.

These facts tended to show that D. F. Tutt was a subcontractor for Gross & Janes. But the testimony of appellant, McKinnon and both Tutts tended to contradict such relationship and to establish the contention of appellant and the Tutts that D. F. Tutt was not a subcontractor of Gross & Janes, but was the employer of appellant and all others who worked for either D. F. or Emmett Tutt.

The Commission, therefore, had substantial evidence before it to sustain its findings that appellant was not an employee of Gross & Janes, but that he was an employee of D. F. Tutt. The findings of the Commission on factual questions are as binding on the courts as are the verdicts of juries. *Ozan Lumber Co.* v. *Garner,* 208

Ark. 645, 187 S. W. 2d 181, and cases there cited. And we have held that the "Circuit Court on appeal from the Commission, and this court, on appeal from the Circuit Court, must weigh the testimony in the strongest light in favor of the Commission's finding." *Hughes* v. *Tapley, Admr'x.,* 206 Ark. 739, 177 S. W. 2d 429.

In the Hobbs-Western case, above cited, the Commission found that Hobbs-Western was the principal contractor and that Lea was a subcontractor for it, and we affirmed. Here, with very substantial evidence to support a contrary finding, we must again and do affirm the judgment of the Circuit Court which affirmed the award of the Commission.

Affirmed.