**HUFFSTETTLER  v.  LION OIL CO.**
No. 14797.

United States Court of Appeals
Eighth Circuit.
Dec. 11, 1953.

550

Griffin Smith, Jr., Little Rock, Ark. (John F. Gibson, Dermott, Ark., and Warren E. Wood, Little Rock, Ark., were with him on the brief), for appellant.

Frank E. Chowning, Little Rock, Ark. (J. Merrick Moore and Moore, Burrow, Chowning & Mitchell, Little Rock, Ark., were with him on the brief), for appellee.

Before JOHNSEN and COLLET, Circuit Judges, and NORDBYE, District Judge.

NORDBYE, District Judge.

Appellant, sometimes referred to as Huffstettler, appeals from the trial court's order granting appellee's motion for a summary judgment. The action is one for personal injury based upon negligence. At the time of the injury, appellant was employed by one M. F. Taylor, a distributor of appellee's petroleum products in a certain exclusive territory assigned to Taylor, whose duties and the respective obligations of the parties thereto are to be found in a written contract as amended from time to time and which is designated as a distributor's contract. Under the provisions of this contract, appellee Lion agreed to ship from time to time the petroleum products as listed in the contract to Taylor at the bulk plant of Lion located at Hamburg, Arkansas. The petroleum products thus delivered were to be sold by Taylor in behalf of Lion to all the latter's customers in the territory assigned to Taylor at prices fixed by Lion, and as compensation Taylor was to receive a certain commission as listed in his contract upon the products thus sold and accounted for by him. Taylor was to furnish at his own expense the necessary trucks and other equipment for the distribution and sale of Lion's petroleum products in the territory. He also was required to hire at his own expense the necessary labor in the performance of the distributorship.

One Joe Kusturin was a retail dealer of Lion's in Taylor's territory under a

written contract with Lion. During the existence of the contract, however, and in 1945, Kusturin died. Apparently his estate was not probated. His widow thereafter continued to operate the station substantially in the same manner as operated by her husband, but she did not, and was not requested to, enter into any written contract with Lion. On the day of the accident, February 6, 1952, Huffstettler was instructed by Taylor to deliver certain gasoline to the Kusturin Service Station. In filling this order at the bulk plant at Hamburg, Arkansas, a valve releasing the gasoline stored in the bulk plant was allegedly out of order. The gasoline escaped and spilled on Huffstettler, and the resulting vapor came in contact with an open gas stove nearby, causing a fire which resulted in Huffstettler's injury. Taylor was not qualified under the Arkansas Workmen's Compensation Act. Huffstettler thereafter brought this action for damages against Lion charging it with negligence. Lion moved the court for a summary judgment upon the ground that Huffstettler's exclusive remedy was to proceed against Lion under the Arkansas Workmen's Compensation Act, because the Act provides that where a subcontractor fails to secure the compensation required by its terms, the prime contractor shall be liable for compensation to the employees of the subcontractor.

Section 6 of the Arkansas Workmen's Compensation Law, Section 81–1306, Arkansas Statutes 1947, Annotated (1951 Supplement), provides:

> "Where a subcontractor fails to secure compensation required by this Act, the prime contractor shall be liable for compensation to the employees of the subcontractor. * * *"

In disposing of the motion for summary judgment, the court concluded that

> "Lion was a contractor and Taylor a subcontractor, and in view of the fact that Taylor did not carry insurance as required by the Workmen's Compensation Law of Arkansas * * * Lion was the statu-

tory employer of Taylor's employees, including plaintiff, and is liable to plaintiff for compensation under the act."

And in view of Section 81–1304, Arkansas Statutes 1947, Annotated (1951 Supp.); Init.Meas.1948, No. 4, Section 4, which provides that "The rights and remedies herein granted to an employee subject to the provisions of this Act (§§ 81–1301—81–1349), on account of injury or death, shall be exclusive of all other rights and remedies of such employee," the court concluded that because Lion had afforded compensation coverage, the rights of Huffstettler against Lion were limited exclusively by the rights afforded to him under the provisions of the Workmen's Compensation Act, and therefore dismissed the action upon the ground that it lacked jurisdiction.

Huffstettler assigns error as follows: (1) That Lion is not a contractor within the meaning of Section 6 of the Workmen's Compensation Act because it is a producer and merchandiser of goods and not one who agrees to render service or perform work in connection with the sale of goods; (2) that his injury was not incurred in the course of and in the performance of any contract between Lion and one of its retail dealers and hence Section 6 of the Act would not apply; and (3) under the Arkansas Constitution, no limitation of liability for personal injuries could be imposed except in the employer-employee relationship, which is not present here.

Appellee's customers who purchased petroleum products from it for resale at their gasoline service stations operated under a Dealer's Sales Agreement and an Equipment Rental Agreement. These contracts and their fulfillment constituted something more than a mere sale of petroleum products. There were substantial services to be rendered by Lion in connection with the fulfillment of these contracts with its retail dealers, and substantial services to be rendered by Taylor to Lion under his distributor's contract. Under its contracts with its dealers, Lion was required to and did,

maintain adequate bulk stations in the territory so as to insure expeditious delivery of its products. It agreed to sell to its dealers any of its petroleum products offered in the immediate territory assigned to Taylor and served by its bulk plant at the prices which prevailed in the territory. It agreed to lease to the dealers for a nominal consideration suitable equipment for the dispensing of its petroleum products. It agreed to install at its own expense the leased equipment, such as tanks, pumps, and miscellaneous paraphernalia. Lion reserved the right and privilege of placing its advertising material in and about the premises of the dealer. The dealer agreed to purchase a minimum amount of gasoline, motor oil and kerosene each month to keep the tanks substantially full of the required petroleum products so as to insure an adequate supply for the trade. The dealer also agreed to indemnify Lion for any and all liability for loss and damage caused by leakage, fire or explosion of gasoline and kerosene in and about the service station, whether due to imperfections of equipment or negligence, and to keep the property belonging to Lion in good working order, together with other miscellaneous duties and obligations.

In determining whether or not Lion was a prime contractor and Taylor a subcontractor in doing that which was done at the time of Huffstettler's injury, the relationship of Lion to Taylor and of Lion to the various retail gasoline stations selling Lion's petroleum products in this territory must be considered and appraised. Taylor was assigned as a distributor of Lion's products to all of Lion's dealers in certain assigned territory in Ashley and Drew counties in the State of Arkansas. All of these retail distributors which Taylor served were operating under contracts similar to that which was held by Joe Kusturin during his lifetime. All of these customers were served through Taylor and from Lion's bulk plant located at Hamburg, Arkansas. All orders for petroleum products given to Taylor by such customers and filled by him were not mere sales of petroleum products, but were actually the performance by Taylor of a duty essential to the fulfillment of one of the several substantial services which Lion agreed to perform for its customers and the discharge of a duty which Taylor had agreed to perform under his contract with Lion. Lion had contracted to furnish its customers petroleum products as they might require for their particular needs. That obligation and that service rested upon Lion at all times. Indeed, that was Lion's primary liability. The only way in which Lion could comply with that obligation and service was through the services of Taylor, and when Huffstettler was filling the Kusturin order he was performing work in furtherance of that obligation and that service to one of Lion's customers. Thus, certain requirements of the retail dealers for Lion's petroleum products, which Lion had agreed to make available under its contract, had to be fulfilled by Taylor. Under these circumstances, the teachings of the Arkansas cases unmistakably indicate that Lion was the contractor, and Taylor, in fulfilling his duties to Lion in supplying the service stations with the necessary petroleum products, was the subcontractor. Hobbs-Western Company v. Craig, 209 Ark. 630, 192 S.W.2d 116; Brothers v. Dierks Lumber & Coal Company, 217 Ark. 632, 232 S.W.2d 646. At the time Huffstettler was injured, it is clear that he was acting in the course and scope of his employment with Taylor as such subcontractor.

In Brothers v. Dierks Lumber & Coal Company, Dierks contracted with the United States Forest Service for the purchase from the Government of certain merchantable timber growing in a national forest. The contract in some detail required Dierks to sever and remove the timber in a certain specific manner so as to conform with good forestry practice and, among other things, to avoid fire hazard and protect the young timber left standing. Brothers was employed by one Durham, who was a con-

tractor employed by Dierks in the removal of the timber being hauled from the National Forest. After discussing Hobbs-Western Company v. Craig, supra, which had applied Section 6 of the Arkansas Workmen's Compensation Law to employees of a subcontractor under a contract for the purchase and sale of timber products, the court stated, at page 638 of 217 Ark., at page 650 of 232 S.W.2d:

"If Hobbs-Western Co. was a 'contractor' within the meaning of section 6 (and we have so held) there is no escape from the conclusion that Dierks was likewise a 'contractor' under the same section. The contractual duties imposed upon Dierks under its contract, by way of work to be done and services to be performed as distinguished from the mere sale of goods, were far more substantial than those imposed upon Hobbs-Western Co. under its contract. We do not hold that a mere contract for the sale of goods makes either the buyer or seller, or both, a 'contractor' within the meaning of section 6, but we are committed to the view that when the contract to sell is accompanied by an undertaking by either party to render substantial services in connection with the goods sold, that party is a 'contractor' within the meaning of the section.

"Once it is determined that Dierks was a 'contractor' under its Forest Service contract, it follows automatically that Dan Durham was a 'subcontractor', since he was performing under contract with Dierks a part of the work—removal of the merchantable timber—called for by the Dierks-Forest Service contract. The fact that Durham was not cutting timber, but only removing it, is unimportant; a single subcontractor is not expected to do all the work which the principal contractor has agreed to do. What Durham was doing was an essential part of the interdependent whole called for by the Dierks-Forest Service contract."

Here, what Taylor was doing was likewise "an essential part of the interdependent whole" called for by the agreement between Lion and its customers. It may be noted that the wording of Section 6 under the 1939 Act as construed by the court in Brothers v. Dierks differs somewhat from the wording in the amendment of Section 6 to be found in the 1948 measure. Nevertheless, the variance in wording does not lessen the weight to be given to the Dierks case in construing the present text of Section 6.

■ The mere fact that Mrs. Kusturin never had entered into a formal written contract with Lion seems immaterial in view of the circumstances. Her continued operation of the station, the availability to her, and her acceptance of, the facilities and benefits furnished by Lion in such operation, impel a finding that there was a mutual understanding between the parties to the effect that she was a customer of Lion's with the same mutual obligations between her and Lion as if a formal written contract had been entered into. In any event, she was a customer of Lion's for whom Lion had been performing substantial services since the death of her husband in 1945 and to whom Lion owed the duty of furnishing its products through Taylor. In doing that which he did in filling the Kusturin order, Huffstettler was engaged in the scope of his employment with Taylor and in carrying out one of Taylor's obligations to Lion.

■ A liberal construction must be given to the Workmen's Compensation Law. Its purposes are remedial, and if Lion is the statutory employer and Huffstettler is the statutory employee under its terms, the Court should apply the benefits of the Workmen's Compensation Act in the same manner as if a contract relationship of employer and employee existed. The purpose of the law is to provide the same protection for a statutory employee as the law accords to a contract employee. In other words, the

Act does not distinguish between the rights and benefits accorded to a contract employee from that accorded a statutory employee, and the same concept of the employer-employee relationship, statutory or contractual, prevails throughout the Act. Certainly, if the rights and benefits are exclusive under the Act where a contract relationship of employer-employee exists, it necessarily follows that in carrying out its purposes and objects the Legislature intended that where the relationship of statutory employer-employee exists, the rights and remedies under the Act are likewise exclusive.

■■ Appellant relies on the Arkansas constitutional limitation on the right of the Legislature to place any limit of liability for personal injuries and contends that such limitation will be infringed if he is relegated to the Workmen's Compensation Act as his exclusive right of recovery against Lion. The Constitution of Arkansas, Article V, Section 32, provides:

"No act of the General Assembly shall limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property".

However, Amendment 26 of the Constitution provides:

"The General Assembly shall have power to enact laws prescribing the amount of compensation to be paid by employers for injuries to or death of employees, and to whom said payment shall be made * * * provided, that otherwise no law shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property; * * *."

The court in Brothers v. Dierks, supra, held that when the Legislature used the term "employees" in Amendment 26, that term should be interpreted so as to include the term "statutory employee", and sustained the constitutionality of Section 6 in limiting a statutory employee to the exclusive benefits of the Workmen's Compensation Act. Appellant urges, however, that Section 6 is only constitutional in view of Article V, Section 32, of the Arkansas Constitution if the statutory employee has no common law right against the statutory employer and contends that that is the purport of the holding of the Arkansas Supreme Court in Brothers v. Dierks. He urges that Brothers had no common law right against Dierks, and hence in applying the provisions of the Compensation Act as being exclusive, the Arkansas Supreme Court merely held that the Legislature could confer upon a statutory employee a right of compensation against a statutory employer where no right of recovery for injuries sustained against such employer existed under the common law. In other words, that the Legislature could create a new cause of action. Here, it is urged that Huffstettler had a common law right against Lion grounded upon negligence and that the Legislature could not deprive him of that right without infraction of the constitutional prohibition in the Arkansas Constitution. But notwithstanding Brothers had no common law right for damages as against Dierks, such reasoning as urged by appellant is not consonant with the purposes and objects of the Act, and if adopted it would destroy the basic and remedial purposes of the Act in its attempt to provide coverage for the employees of irresponsible subcontractors. Moreover, it could be argued with the same force that where a contract employee has a common law right against a contract employer, he may proceed under such right and refuse the benefits of the Compensation Act. Although the Arkansas Supreme Court has not ruled upon this specific question, it would seem that the express purpose of Amendment 26 to the Arkansas Constitution was to grant to the Legislature the right to adopt a Workmen's Compensation Act, and necessarily to substitute for the common law right of damages of all employees, whether contractual or statutory, their exclusive right under the Compensation Act against the employer where the employer, whether he be contract or

statutory, has secured for the employee the compensation payments as required by the remedial benefits of the Act. And that the liability of any employer, contractual or statutory, for compensation is exclusive and that no common law right for damages exists where the employer provides compensation coverage, is to be deduced from the language of the Act itself in that the only provision of the Act under the circumstances here where an employer is subject to any common law liability by an employee is when the employer has failed to secure the payment of compensation. Section 81–1304, Arkansas Statutes 1947 Annotated (1951 Supplement); Init. Meas. 1948, No. 4, Section 4, partially quoted above, is followed by this provision:

> " * * * if an employer fails to secure the payment of compensation, as required by the Act, an injured employee * * * may, at his option, elect to claim compensation under this Act or to maintain a legal action in court for damages on account of such injury or death. In such action it shall not be necessary to plead or prove freedom from contributory negligence nor may the defendant employer plead as a defense that the injury was caused by the negligence of a fellow-servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee."

The evident object of the Arkansas Workmen's Compensation Act, in constituting a prime contractor who provides compensation protection as the statutory employer for the subcontractor's employees where such subcontractor fails to furnish employees' compensation, was to provide an additional safeguard for the protection of the employees of irresponsible subcontractors. It is not to be assumed that the Legislature intended to place on the prime contractor under such circumstances a more extended coverage to the employees of the subcontractor than such prime contractor would owe to its own contractual employees. It is reasonable to conclude that the Act never intended under the circumstances herein that a statutory employer should be subject to the burdens of the Compensation Act with reference to the subcontractor's employees and also to the burdens of common law liability to such employees as well. Once it is recognized that Lion was the statutory employer of Taylor's employees, Lion should not be divested of that character by the refusal of such employees to accept the benefits of the Compensation Act. Comparable provisions as to the liability for workmen's compensation of a prime contractor for injury sustained by the employees of a subcontractor who has failed to comply with the Act are to be found in many of the compensation acts of other states. The terms "statutory employer" and "statutory employee" were not new and novel when the Arkansas Compensation Act was adopted. As stated by the Arkansas Supreme Court in Brothers v. Dierks, 217 Ark. at page 640, 232 S.W.2d at page 651:

> "For one thing, we deem it safe to say that the framers of Amendment 26 had in mind the workmen's compensation laws of a majority of the other states, already in force in 1938. Most of these laws included the concept of the statutory employee, as it now appears in Arkansas in our section 6, as a part of their provisions for 'compensation to be paid by employers for injuries to or death of employees'. See 2 Schneider, Workmen's Compensation (perm.ed., 1942) 175; Annot[ations]., 58 A.L.R. 872; 105 A.L.R. 580. The framers of Amendment 26 intended to make it possible for Arkansas to enact workmen's compensation laws similar to those which had appealed to the good legislative judgment of other states. It cannot be assumed that they did not intend to adopt here the same concepts of the words 'employer' and 'employee' as were already in force in the same field in other states."

We conclude, therefore, that the ruling of the District Court on the motion for summary judgment was correct, and its order dismissing the complaint herein for lack of jurisdiction must be, and is, affirmed.