MAGNOLIA PETROLEUM COMPANY v. GRIYCH.

4-7168                                          176 S. W. 2d 435

Opinion delivered November 22, 1943.

*Cockrill, Armistead & Rector,* for appellant.

*Lawrence E. Wilson,* for appellee.

HOLT, J.    April 29, 1942, appellee, Mrs. Mike Griych as dependent mother of Paul Latham, filed claim for compensation before Arkansas Workmen's Compensation Commission against appellant, Magnolia Petroleum Company, self insurer. Her claim was based upon an

injury to her son, Paul Latham, resulting in his death, it being alleged by her, that he was an employee of appellant at the time. Appellant denied liability on two grounds: (1) that appellee's son was not its employee at the time of his injury and death, and (2) that his injury and death resulted solely from intoxication and therefore not compensable.

June 24, 1942, the claim was heard before W. R. Thrasher, referee, and there was a finding in favor of appellee. December 16 following, on appeal to the commission, the referee's finding was sustained. Appellant then appealed to the Columbia circuit court, where, upon a hearing May 17, 1943, the court sustained the finding and award of the commission. This appeal followed.

For reversal, appellant argues here, as it did below: (1) that the court erred in refusing to hold that Paul Latham was not an employee of appellant at the time of his accidental death and that appellee was not entitled to compensation, and (2) in refusing to hold that his death was caused solely by intoxication and therefore not compensable.

Since we have reached the conclusion that appellant's first contention must be sustained, it becomes unnecessary to consider the second.

The facts on this first contention are practically undisputed. Percy Moore was appellant's commission agent at Stamps, Arkansas, under a written contract, for the sale of its products in a territory around Stamps. Under the contract, Moore hired, discharged and paid his own help out of his own funds. He owned the truck that he used in his business, but appellant owned the tank upon the truck. He was paid a commission, based on percentage of sales and distance of haul. Moore solicits his own business, goes and comes when and where he chooses, and is not directed as to route, speed or time. Appellant "was not consulted in the employment or discharge of men employed by Moore" (quoting from appellee's brief). Appellant knew that Moore was using drivers. Paul Latham was employed as truck

driver by Percy Moore at a wage of $2 per day and had been working in that capacity for three or four days, when at about 8:30 p. m., June 9, 1941, while driving a truck for Percy Moore, carrying a tank belonging to appellant, in which gasoline also belonging to appellant was being transported, collided with a log truck, resulting in the death of Latham and the driver of the log truck. Percy Moore was riding with Latham at the time, but was uninjured. Latham was driving on the left-hand side of the highway at the time, in a westerly direction. There was evidence that Latham was intoxicated.

Paragraph 3 of Percy Moore's contract with appellant is as follows: "Agent assumes all liability for loss and damage of whatever character sustained by the company or third persons resulting from the acts of agent or his employees and servants. Any and all employees or servants employed by agent are exclusively servants and employees of agent, and agent is not released from any liabilities and duties imposed under this contract by reason of the performance of same by agent's servants, employees, or others."

It, therefore, appears, on the facts and the written contract, under which Percy Moore was operating as appellant's commission agent, that Moore hired and discharged his own helpers or employees at will, without consulting appellant and paid them out of his own funds. Under the plain and simple language of the contract "any and all employees or servants employed by agent (Percy Moore) are exclusively servants and employees of agent, and agent is not released from any liabilities and duties imposed under this contract by reason of the performance of same by agent's servants, employees, or others." The parties to this contract are bound by its terms, and under its terms, Percy Moore agreed, as he had a right to do, to relieve, and did relieve, appellant from any liability growing out of the acts of employees or helpers or truck drivers, which Moore might see fit to employ, and Paul Latham was, under the contract and circumstances here, an employee of Percy Moore and not of appellant.

We have been unable to find a case from this court directly in point. However, counsel for appellant strongly rely on the case of *Texas Co.* v. *Brice,* (1928; C. C. A. 6th) 26 F. 2d 164 (writ of certiorari denied in 1928; 278 U. S. 640, 73 L. ed. 555, 49 S. Ct. 34). In that case, the facts and contract provisions are in effect similar to those in the instant case. In fact, they are almost identical. The reasoning in this Brice case appears to us to be sound and we think the principles of law announced apply with equal force here. In that case, the defendant, Texas Co., appointed, under a written contract, its commission agent, Hutton, to sell its products in Shelbyville, Tenn. The contract provides: "If a commission agent, you will accept full responsibility for, and indemnify the company against, all acts or omissions of your agents, employees, and servants. Hutton employed as a helper, one Nelson, to assist him about the oil station and to drive a motor truck owned by Hutton and used by him in delivering the defendant's products which he sold. Nelson was hired, paid and directed by Hutton alone, and the defendant took no part in employing, paying, or directing him, although it knew of, and consented to, his employment by Hutton. The truck referred to was owned by Hutton, although the name and trade-mark of the defendant had been painted on its sides, as well as on the oil station and the tanks and other equipment used in connection therewith."

While Nelson was driving a truck delivering a quantity of gasoline, which had been ordered by a customer, but which still belonged to the Texas Co., he negligently drove upon a railroad track. His truck was struck by an oncoming train, causing the death of Mrs. Brice's husband, engineer of the train. The court there said: "We think it unnecessary to decide or consider whether Hutton was, as to the defendant, an agent, as claimed by plaintiff, or an independent contractor, as claimed by the defendant, although, of course, the question of defendant's status as against this particular claim is not to be controlled by any matter of nomenclature. Assuming, as we may do for the purposes of this

opinion, that his relation to the defendant was that of an agent to a principal, it by no means follows that the relation between his employee, whose negligence caused the death of the plaintiff's decedent, and the defendant, was such as to make the defendant liable for such negligence. The test as to such liability must, of course, be whether the defendant either expressly or impliedly authorized Hutton to employ this driver as the agent or servant of the defendant. We have searched the entire record in vain for any evidence which would warrant a finding or proper inference of any such authority. It is obviously not enough that the jury might have properly found that the defendant knew of, and consented to, the employment of such driver by its said agent (if Hutton was its agent). It is, indeed, sometimes loosely stated in textbooks and even in opinions by courts that consent by a principal that his agent may employ agents makes the agents so-employed the subagents of the principal, so as to fasten upon him liability for their acts within the scope of their employment. That, however, is too broad a statement of the applicable rule, because it overlooks the important distinction between a principal's consent, on the one hand, that his agent may employ an agent or servant on behalf of the principal, and the principal's mere consent, on the other hand, that the agent may employ his own agent or servant, who may even assist him in performing his duties to said principal, but who remains, nevertheless, the representative of only his immediate employer, and stands in no relation to the principal of such employer. Prof. Mechem, in his admirable treatise on the law of agency, has in the following language well pointed out the true principles involved (pages 240, 242, 1447): 'The principal may, of course, authorize the employment of the subagent on his account and as his agent and thus create privity of contract between them. But he may also do less. He may occupy a middle ground. He may clearly be willing to consent that his agent may perform the duty through a substitute employed at the agent's risk and expense, when he would not be willing, at his own risk and expense, to

have such a substitute employed. . . . The principal may consent to the employment of subagents on such terms as please him, and, where he has consented only upon the express or implied condition that the subagent shall not be deemed his agent, that condition, as between the parties, must control.' . . . We think the present record barren of any evidence warranting an inference that the defendant consented or intended that the truck driver here involved, whom it neither employed, paid, nor directed, and for whose negligence it had expressly disclaimed liability in its contract with the employer of such driver, should be its own agent or servant. . . . The existence of agency may often be a question of fact requiring submission to the jury; not so when the contract is in writing and there is no dispute or room for disputed inference as to the other documents, correspondence, and acts which might sometimes bear upon construction.''

Appellee relies strongly upon two cases from this court, *Magnolia Petroleum Company* v. *Johnson,* 149 Ark. 553, 233 S. W. 680, and *Karcher Candy Company* v. *Hester,* 204 Ark. 574, 163 S. W. 2d 168, in support of her claim that Latham was an employee of appellant. We think, however, that these cases are distinguishable and do not control here. In the former, or Johnson case, there was absent any contract provision, such as appears in the instant case, and in the latter case, the facts were materially different, in that the candy company virtually conceded that Rex Chastain had been hired by the company's agent, Montgomery, at its instance and the candy company was paying a part, if not all, of the wages of the helper, Chastain. .

For the error indicated, the judgment is reversed, and since the cause seems to have been fully developed, it is dismissed.

McFADDIN and KNOX, JJ., dissent.

McFADDIN, J., (dissenting). I respectfully dissent from the majority, because I believe that the opinion of the majority is in violation of § 6 of the Arkansas Work-

men's Compensation Act, (Act No. 319 of 1939) which says in part: "Subcontractors.—A contractor in the performance of whose contract one or more persons are employed, either by himself or by a subcontractor, who subcontracts all or any part of such contract shall be liable for and shall pay compensation to any employee injured whose injury arises out of and in the course of such employment, unless the subcontractor primarily liable therefor has secured compensation for such employee so injured as provided in this Act." As I understand and apply this section to this case, the Magnolia Petroleum Company was liable to Latham and any other employees of Moore until and unless the Magnolia Petroleum Company required Moore to carry insurance for the benefit of Latham and Moore's other employees; and the majority opinion does not take into consideration this section of the Arkansas Workmen's Compensation Act, and applies the ordinary rules of independent contractor relationship, which rules are abrogated in a case like this one by the statute previously mentioned.

All states do not have a provision in the Workmen's Compensation Law comparable to § 6 of our law. The words found in 71 C. J. 483, are in point: "*Employers of Contractor or Subcontractor.—In General.*—In the absence of statute so providing, the employee of an independent contractor or subcontractor is not entitled to compensation from the employer of such independent contractor or subcontractor for injuries suffered. In many jurisdictions, however, under compensation acts therein expressly providing therefor, the employees of a principal's independent contractors or subcontractors are, for the purposes of the compensation act, employees of the principal." Cases cited to sustain the last portion of the text are from the ten states listed below; and by each state is listed here the volume and page of the Workmen's Compensation Statutes by Schneider where the appropriate provision of the statute of such state can be found, to-wit:

| State | Volume | Page |
|-------|--------|------|
| Colorado | 1 | 337 |
| Connecticutt | 1 | 420 |
| Illinois | 2 | 885 |
| Indiana | 2 | 1003 |
| Kansas | 2 | 1171 |
| Kentucky | 2 | 1218 |
| Louisiana | 2 | 1343 |
| Massachusetts | 2 | 1485 |
| New York | 3 | 2647 |
| Ohio | 3 | 3005 |

Continuing from 71 C. J. 484, the text is: "The relation established is of purely statutory origin; by such provision the legislature, for the purposes of the compensation act, created the relation of employer and employee between independent groups, that is, employers on the one hand and employees on the other, which had never before borne that relation as to each other; it forces liability upon parties who are not in privity of contract and causes one of them, often referred to as a statutory employer, to be liable for accidents for which he may in no way be responsible. Such a provision makes the principal employer liable the same as if he had directly hired the employees for the work which such principal employer is carrying on. Such provisions are not limited to employees of a contractor standing in immediate contractual relation with the original contractor, but extend to employees of subcontractors of any degree, provided such subcontractors have a lawful right or duty to engage in the business undertaken by the original contractor."

And then on the purposes of such provisions, it is stated in 71 C. J. 485: *"Purpose of Provisions.* The purpose of provisions of the character under consideration is not for the protection of subcontractors; they were enacted for the purpose of giving employees of the contractor a remedy against the principal, the object being to afford full protection to workmen by preventing the possibility of defeating the compensation act by hiring irresponsible contractors or subcontractors to carry on a part of the employer's work."

Particular attention is called to the Colorado case of *Maryland Casualty Co.* v. *Industrial Commission,* 86 Colo. 553, 283 Pac. 548. In that case, the Sinclair Refining Company employed Lewis by written contract to sell its products. He was an independent contractor. Lewis employed Fred Hill to drive the truck for Lewis, and Hill was killed while driving the truck. The Supreme Court of Colorado held that the Sinclair Refining Company was liable to the family of Hill under § 49 of the Colorado Workmen's Compensation Act, which is found in Schneider on Workmen's Compensation Statutes, vol. 1, p. 337, as above listed, and which section reads in part as follows: "Any person, company or corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof to any lessee, sub-lessee, contractor or sub-contractor, shall irrespective of the number of employees engaged in such work, be construed to be and be an employer as defined in this Act and shall be liable as provided in this Act to pay compensation for injury or death resulting therefrom to said lessees, sub-lessees, contractors and sub-contractors and their employees, and such employer as in this section defined shall, before commencing said work, insure and shall keep insured his liability as herein provided and such lessee, sub-lessee, contractor or sub-contractor, as well as any employee of such lessee, sub-lessee, contractor, or sub-contractor, shall each and all of them be deemed employees as defined in this Act."

The Colorado case fits the case at bar like a glove fits a hand. Change the names in the Colorado case to those in the case at bar and it is identical.

The cases cited by the majority to avoid liability on the basis of independent contractor relationship failed to take into consideration this § 6 of the Arkansas Statute on Workmen's Compensation. Many other cases could be cited, but sufficient have been shown to demonstrate the reasons for the dissent.